## Hopkins' Ex'x et al. v. Osborne.

May 5, 1939.

230

J. W. HOWARD and W. P. MAYO for appellants.
B. F. COMBS and A. B. COMBS for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This action was filed by appellee, David Osborne, against J. C. Hopkins in his lifetime to recover a balance claimed to be due for work and labor. It is alleged that he performed 4,490 hours' labor during the years 1929, 1930, 1931, and 1932; that, while he had no contract or agreement with Hopkins as to the price of the labor, it was of the reasonable value of 37½ cents per hour; that Hopkins had paid to him $950, leaving due a balance of $753.75. Hopkins died before the action came to trial, and it was revived against his executrix and legatees under his will. Judgment was rendered against the executrix for $730.75, from which judgment this appeal is prosecuted.

Appellee testified fully as to the transactions between him and Hopkins, but exceptions were sustained to all of his testimony by the trial court. There can be no question as to the correctness of the trial court's ruling in sustaining exceptions to all testimony of appellee concerning transactions between him and Hopkins. Civil Code of Practice, Section 606; Ashabraner's Executor et al. v. Owens, 267 Ky. 728, 103 S. W. (2d) 283.

Several witnesses testified for appellee that he had performed a certain amount of work and labor for Hopkins and that the reasonable and customary charge for such labor in the community was 37½ cents per hour. None of these witnesses was able to state with any degree of approximation whatever the amount of work performed by appellee, so that their testimony on the main issue is immaterial, since it is admitted by appellee that Hopkins paid him $950 for work and labor.

On the trial of the case appellee introduced in evidence a memorandum book kept by him in which he had kept an account of the kind and character of labor performed for Hopkins and the amount of money due therefor at 37½ cents per hour. No other accounts or charges against other persons are shown in this book, except that on one page is shown an account against Mrs. Hopkins showing payment in full by John C. Hopkins.

Under subsection 6 of Section 606 of the Civil Code of Practice, a person may testify for himself as to the correctness of original entries made by him in an accounting according to the usual course of business, though the person against whom they were made may have died or become of unsound mind. Assuming, but not deciding, that this is the character of transaction contemplated by that language of the Code, that is, that the entries in this book were entries made in "the usual course of business," appellee was competent as a witness to introduce the book in evidence and to testify as to the correctness of the entries therein.

We are thus confronted with the single question of whether or not this memorandum book introduced by appellee is sufficient to sustain the judgment entered in his behalf. There is no other competent evidence in the case whatever on which to base the judgment.

Books of account are received in evidence largely on the ground of necessity and as an exception to the general rule that unsworn statements made by a party cannot be received as evidence in his behalf, and it is generally recognized that they should be guardedly received. As said by the writer of the text in 10 R. C. L. 1174:

> "The courts have frequently expressed the opinion that evidence of this character is quite unsatisfactory, and that it should be subjected to close scrutiny. It has been said that books of account are received in evidence only upon the presumption that no other proof exists. They are justly regarded as the weakest and most suspicious kind of evidence. The admission of them at all is a violation of one of the first principles of the law of evidence, which is, that a party shall not himself make evidence in his own favor."

The memorandum book introduced in evidence by appellee has numerous alterations and erasures and at certain places in the book entire pages on which entries were made have been erased; at other places large parts of the page which originally contained entries have been erased. It was testified by appellee that all credits for payments made by Hopkins were made in red ink and that these entries were made at the time of such payments or shortly thereafter, but examination of the entries covering many of these payments makes it per-

fectly apparent that the original entry was made in pencil and overwritten in red ink. It is also apparent that in some places in the book where erasures are made, such erasures are of entries made in red, so that the only reasonable deduction to be drawn therefrom is that an entry showing payment has been erased. We find also that in two places in the book entire leaves have been torn or cut from the book.

It has been held in many cases that where books of account bear on their face suspicious alterations or erasures, or where some of the leaves have been cut or torn out, they are not competent evidence and should not be admitted to prove an account unless the suspicious circumstances and mutilations are properly explained. 10 R. C. L. 1181 and note in 138 Am. St. Rep. 463, to Sheridan Coal Company v. C. W. Hull Company, 87 Neb. 117, 127 N. W. 218.

We have made a careful examination of the memorandum book of account relied on by appellee and have reached the conclusion that its general appearance is not such as to import the necessary verity to be considered as sufficient evidence to sustain this judgment. The receipt in evidence of a party's account book to sustain a claim against a decedent is at best a dangerous type of evidence, and when it is to be received under a statute making it an exception to the general law, it must bear on its face sufficient evidence of correctness or genuineness to enable the court to have some degree of satisfaction in the correctness of its action in basing a judgment thereon. The book relied on as the sole evidence to sustain this claim is not conducive to establish with even a reasonable degree of certainty that Hopkins was indebted to appellee in this large amount for work and labor.

It is suggested by counsel for appellee in the brief that there were no alterations or erasures in the book at the time of the trial and that if such appear now, they must have been made since the book was introduced in evidence. However, we are not at liberty to indulge any such presumption and must presume that the records appearing before us are the genuine records of the trial court and that any exhibit in the record is now in the same condition as it was on the trial.

Since this suit was filed in equity and was treated and tried by the parties as an equitable action, the judg-

ment is reversed with directions to enter a judgment dismissing the petition.

The Whole Court sitting.