**Roy SANDERS et al., Appellants,**

**v.**

**Jerre C. MATTICK et al., d/b/a East End Lumber Company, Appellees.**

Court of Appeals of Kentucky.

Oct. 27, 1967.

William G. Reed, Carrollton, for appellants.

R. L. Hardin, Carrollton, for appellees.

STEINFELD, Judge.

Appellees are engaged in the lumber and building materials business. Appellant, Roy Sanders, is a building contractor. The lumber company claimed that Sanders owed it $22,048.70 for goods and supplies bought and delivered between May 24, 1958, and May 8, 1961. Various defenses to this claim were made. From a judgment in favor of the lumber company in the amount of $9,472.10 with interest the contractor appeals. We affirm.

The contractor admits that over a period of years he had made many purchases from the lumber company. Apparently he had depended upon Mr. Jerre C. Mattick, one of the owners of the lumber company, to keep the records of his indebtedness and Sanders kept no records. The original answer was a general denial. Next tendered was an amended answer and counterclaim in which Sanders charged that instead of being indebted to the lumber company the lumber company owed him $25,626.00 for merchandise returned, payments made but not credited and for bookkeeping errors. Later he filed a second amended answer and counterclaim admitting mistakes made in the first counterclaim. This time he demanded that he recover of the lumber company $20,603.39. In his third amended answer and counterclaim he charged that in addition to the other demands he had made, the lumber company owed him the additional sum of $5,805.00 for discounts on purchases he had made.

The trial court appointed a special commissioner for the purpose of hearing testimony, examining the multitude of entries of account and supporting memoranda and making a report to the court. Five volumes of testimony were taken. The special commissioner sought and obtained the aid of a certified public accountant in preparing his computation. Exceptions were filed to the commissioner's report. The trial court sustained some of the exceptions and entered the judgment from which this appeal is taken.

It appears that the usual and customary bookkeeping methods of the lumber company included the preparation of three copies of each sales ticket. The customer took the yellow copy, the pink copy went into the ticket machine and the original which was a white ticket was used by Jerre C. Mattick in entering charges for sales on the loose leaf ledger sheets. These ledger sheets became the "book of original entry" as defined in Givens v. Pierson's Adm'x, 167 Ky. 574, 181 S.W. 324 (1916). The ledger sheets were produced in evidence. 114 yellow and pink daily sales tickets were offered by Sanders to support his claim that a haphazard method was used by the lumber company in its bookkeeping procedures. The lumber company objected to their introduction. The testimony showed that these tickets were made in the usual course of business and promptly transmitted to Mattick for entry on the ledger sheets. Jungkind Photo Supply Co. v. J. W. Yates, Mo., 257 S.W. 820 (1924). We know of no reason why they should not have been admitted for the purpose offered.

Appellant says that "the sole question to be determined on this appeal is: Should appellant, Roy Sanders, be charged with the sum of $10,920.57 represented by the 114 irregular yellow and pink daily sales tickets?". He contends that these 114 sales

tickets were "irregular" and that these made up a total of $10,920.57 of the charges. He says that the testimony of Jerre C. Mattick with respect to these sales tickets indicates a "feeble" effort to justify these charges.

He claims that these 114 daily sales tickets are branded "with every badge of fraud", but he introduced no proof which indicated fraudulent acts. The appellant did not testify that he did not receive the merchandise. He did not produce any bookkeeping records to show what purchases he made. He demands that we conclude that the testimony is unworthy of belief, and argues that "a casual examination of all the evidence * * * would cause an open minded person to wonder if they ever existed prior to the introduction in evidence as completely as appellee Mattick had prepared them, in absolute contradiction of that firm's method of bookkeeping."

The trial tribunal is the finder of fact. Fleming v. Rife, Ky., 328 S.W.2d 151 (1959); Standard Farm Stores v. Dixon, Ky., 339 S.W.2d 440 (1960); CR 52.01. Here a special commissioner, aided by a certified public accountant, reported his conclusion and then the trial court made a decision on which the judgment was entered. Whether we are caused to wonder if this decision is correct is not the test. "The scope of our review is to determine whether there was sufficient competent evidence to support a judgment * * *". Creech v. Miniard, Ky., 408 S.W.2d 432 (1965). Burke v. Burke, Ky., 416 S.W.2d 724 (1967); Ferguson Contracting Co., Inc. v. Charles E. Story Construction Co., Ky., 417 S.W.2d 228 (decided June 30, 1967).

Mattick testified that all tickets from which he made the entries on the books were prepared in the normal course of business. In Johnson's Adm'r v. Johnson, Ky., 244 S.W.2d 969 (1951) we said:

"The degree of credence to be given books and records of account depends upon their character and the circumstances. Often they are regarded with suspicion for they are usually of a self-serving nature. Martin v. Taylor's Ex'x, 285 Ky. 128, 147 S.W.2d 70; Hopkins' Ex'x v. Osborne, 278 Ky. 229, 128 S.W.2d 575, 142 A.L.R. 1403. But the books in the present case were regularly kept by clerks in an office doing a substantial business and there is no reason why they should not be accepted at face value and without suspicion. Johnson's Adm'r v. Pigg, 242 Ky. 631, 47 S.W.2d 63; Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498. That a modern looseleaf system of bookkeeping was used does not militate against competency, other conditions being present. Gus Datillo Fruit Co. v. Louisville & N.R.R. Co., 238 Ky. 322, 37 S.W.2d 856."

The appellant points out that the deposition of the two partners who operated the lumber business was taken for discovery (CR 26.01) and that each of them testified that the lumber company's books and records with respect to the Sanders account were accurate, and that neither of them "even as much as hinted that any part of Sanders' records were in the unworthy condition as they were when presented to the commissioner at the hearing." Sanders claims that this constituted judicial admissions which prevent recovery. He cited Halbert v. Lange, Ky., 313 Ky. 648, 233 S.W.2d 278 (1950) and relies on the following:

"In 50 A.L.R. page 980, it is said: 'An examination of the decisions reveals that when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony, and cannot successfully complain if he is nonsuited or the court directs a verdict

against him.' See also annotated cases at page indicated above.

"Thus, it will be observed that admissions will be conclusive only as long as they are allowed to stand. This conclusiveness, however, is destroyed if and when the party corrects his statements, explains them, or introduces other testimony showing that he could have been mistaken as to the facts.

"It appears difficult to lay down an ironclad or entirely satisfactory rule. The true test seems to be whether the party's testimony is merely a narrative of events observed or participated in, wherein there is always present the obvious possibility that he, like any other witness, could be mistaken, or whether he was testifying to facts peculiarly within his own knowledge. See Harlow v. LaClair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973. This can be observed by taking into consideration all the conditions and circumstances proven in the case. The correct and generally accepted rule seems to be that laid down in the Sutherland case, above cited by appellant: 'We believe the law to be that admissions fatal to his cause given in the testimony of a party to an action on the trial of the case should be viewed in the light of all the conditions and circumstances proven in the case; and unless all such circumstances and conditions give rise to the probability of error in the party's own testimony, he should not be permitted to avert the consequences of his testimony by the introduction of, or reliance on, other evidence in the case."

The statements that the bookkeeping records were accurate supported the claim. The condition of the bookkeeping records did not "defeat the right to recover" and is not fatal to the cause. There was no "judicial admission" adverse to the lumber company.

Sanders also contends that the testimony of Mattick was uncorroborated and because he is an interested party his testimony should be weighed carefully. The testimony was corroborated to a degree by the ledger sheets and the sales slips which were prepared when and as the sales were made. The findings of fact made by the trial court (CR 52.01) indicate that careful consideration was given to all the testimony. The report of the special commissioner was not fully accepted. The court made a number of adjustments in the commissioner's findings. It is our conclusion that there was sufficient evidence before the trial court to support the judgment and that appellants' claims are without merit.

The judgment is affirmed.

All concur.